*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHNATHAN ANDREW SHANNON,

        Defendant-Appellant.

FOR PUBLICATION
May 27, 2026
2:31 PM

No. 371910
Kent Circuit Court
LC No. 20-008773-FH

Before: MURRAY, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

Defendant entered a no-contest plea to two counts of fourth-degree criminal sexual conduct (CSC-IV) (force or coercion), MCL 750.520e(1)(b); and one count of CSC-IV (victim between 13 and 15 years old), MCL 750.520e(1)(a). As a result, he was sentenced to serve 365 days in jail and ordered to comply with the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*. Defendant now appeals his sentence by leave granted.[1] We affirm.

This appeal stems from defendant's arrest and conviction for criminal sexual conduct involving three minor victims. Defendant was charged in two separate cases, and was found guilty after a trial in one case. In the remaining case, defendant initially pleaded no contest to "the charge of criminal sexual conduct in the second degree involving a person under 13," in exchange for a three-year minimum sentence and all charges being dropped. However, defendant withdrew this plea because he was not informed that lifetime electronic monitoring was a condition of his no-contest plea.

Defendant then entered a new no-contest plea to three counts of CSC-IV in exchange for dismissal of the other charge and the habitual-offender supplement. Plaintiff described defendant's CSC-IV charges as "tier three offenses" for the purposes of SORA. However, the trial court highlighted that the charges appeared to be Tier I rather than Tier III offenses. The prosecution

---

[1] *People v Shannon*, unpublished order of the Court of Appeals, entered September 20, 2024 (Docket No. 371910).

informed the court that defendant's charges would be treated as Tier III despite not being pleaded to, as such. Both parties agreed on the record that a sufficient factual basis for all three counts was established and that one of defendant's victims was less than 13 years old, but defense counsel objected to the trial court's order requiring defendant to comply with SORA. Defendant was sentenced as noted.

This appeal followed. Defendant's original brief on appeal raised just one issue, namely, that requiring defendant to register as a sex offender was unconstitutionally cruel or unusual punishment under the Michigan and United States Constitutions. However, while defendant's appeal was pending, the Supreme Court issued *People v Kardasz*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 165008), which marked a significant change in SORA law by holding that the 2021 SORA is a punishment. In light of *Kardasz*, defendant moved for permission to add additional grounds for appeal in a supplemental brief, which this Court granted. The prosecution filed a supplemental brief in response.

## I. CRUEL OR UNUSUAL PUNISHMENT

Defendant first argues that lifetime SORA registration is unconstitutionally cruel or unusual punishment, both facially and as applied.

This Court reviews issues of constitutional law de novo. See *People v Parks*, 510 Mich 225, 245; 987 NW2d 161 (2022). The Michigan Constitution reads, "Excessive bail shall not be required; excessive fines shall not be imposed; cruel or unusual punishment shall not be inflicted; nor shall witnesses be unreasonably detained." Const 1963, art 1, § 16. The Eighth Amendment's prohibition is against "cruel and unusual" punishment. US Const, Am VIII. "If a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011) (quotation marks and citation omitted).

The prohibition on cruel or unusual punishment requires that sentences conform to the principle of proportionality. See *Parks*, 510 Mich at 241-242. The principle of proportionality requires that a sentence be " 'proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459; 902 NW2d 327 (2017), quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990).

When evaluating if a sentence is so disproportionate as to constitute cruel or unusual punishment, this Court considers four factors set out in *People v Lorentzen*, 387 Mich 167, 176-181; 194 NW2d 827 (1972), and affirmed in *People v Bullock*, 440 Mich 15, 33-34; 485 NW2d 866 (1992): "(1) the severity of the sentence relative to the gravity of the offense; (2) sentences imposed in the same jurisdiction for other offenses; (3) sentences imposed in other jurisdictions for the same offense; and (4) the goal of rehabilitation . . . ." *Parks*, 510 Mich at 242.

Legislatively mandated sentences are presumptively proportionate, and a defendant must show unusual circumstances to overcome this presumption. *People v Burkett*, 337 Mich App 631, 637; 976 NW2d 864 (2021). "Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *Benton*, 294 Mich App at 203 (quotation marks and citation omitted). "A party challenging the

constitutionality of a statute has the burden of proving its invalidity." *People v Jarrell*, 344 Mich App 464, 482; 1 NW3d 359 (2022). "Such a challenge can be brought in one of two ways: by either a facial challenge or an as-applied challenge." *Id*. (quotation marks and citation omitted). A facial challenge argues that a statute is constitutionally invalid under all circumstances, whereas an as-applied challenge "considers the specific application of a facially valid law to individual facts." *Id*. (quotation marks and citation omitted).

"As a threshold matter, the constitutional prohibition against cruel or unusual punishment requires that there first be a punishment imposed[.]" *Id*. at 483 (quotation marks and citation omitted).

> To determine whether a statute constitutes punishment, this Court engages in a two-step inquiry. First, this Court must determine whether the Legislature intended the statute as a criminal punishment or a civil remedy. If the statute imposes a disability for the purpose of reprimanding the wrongdoer, the Legislature likely intended the statute as a criminal punishment. However, if the statute imposes a disability to further a legitimate governmental purpose, the Legislature likely intended the statute as a civil remedy.

> If this Court determines that the Legislature intended the statute as criminal punishment, then this Court must conclude that the statute is indeed punishment. However, if this Court determines that the Legislature intended the statute as a civil remedy, this Court must then consider whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil. However, the Legislature's intent will be rejected only when a party challenging the statute provides the *clearest proof* that the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil. [*People v Lymon*, 515 Mich 145, 160-161; 29 NW3d 58 (2024) (*Lymon II*) (quotation marks and citations omitted).]

To determine a statute's punitive effect, this Court considers five relevant factors from *Kennedy v Mendoza-Martinez*, 372 US 144, 168-169; 83 S Ct 554; 9 L Ed 2d 644 (1963):

> (1) whether the statute has historically been regarded as punishment; (2) whether the statute imposes an affirmative disability or restraint; (3) whether the statute promotes the traditional aims of punishment; (4) whether the statute has a rational connection to a nonpunitive purpose; and (5) whether the statute is excessive with respect to its nonpunitive purpose. [*Lymon II*, 515 Mich at 162.]

Applying the *Mendoza-Martinez* factors in *People v Betts*, 507 Mich 527, 562; 968 NW2d 497 (2021), the Court determined that the aggregate punitive effects of SORA, as amended by 2011 PA 17 and 18 (the 2011 SORA), made the 2011 SORA a punishment despite the Legislature's intent that the 2011 SORA was a civil regulation. While *Betts* was pending, the Legislature enacted the 2021 SORA, effective March 24, 2021. *Id*. at 538. This Court then held in *People v Lymon*, 342 Mich App 46, 81; 993 NW2d 24 (2022) (*Lymon I*), aff'd in part, vacated in part 515 Mich 145 (2024), that the 2021 SORA was a punishment under the *Mendoza-Martinez* factors. Further, this

Court concluded that the 2021 SORA was unconstitutionally cruel or unusual as applied to the defendant in that case whose crime, unlawful imprisonment of a minor, did not involve a sexual component. *Id*. at 82, 88-89.

The Supreme Court reviewed *Lymon I*, and agreed that the 2021 SORA was a punishment as applied to defendants convicted of a crime that did not involve a sexual component. *Lymon II*, 515 Mich at 182. However, the *Lymon II* Court expressly declined to address "whether the 2021 SORA constitutes punishment—and, more specifically, cruel or unusual punishment—when applied to other offenders. To the extent that the Court of Appeals decision in [*Lymon I*] determined that the 2021 SORA constitutes punishment as to all defendants, [the Michigan Supreme Court] [vacated] that conclusion." *Lymon II*, 515 Mich at 159 n 6.

Following *Lymon II*, and applying the *Mendoza-Martinez* factors in the context of an ex post facto challenge to the 2021 SORA, this Court held that SORA was not a punishment as applied to defendants convicted of first-degree criminal sexual conduct (CSC-I). *People v Kiczenski*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364957); slip op at 1, 13. In *Kardasz*, ___ Mich at ___; slip op at 42, however, the Court held that lifetime registration under the 2021 SORA is a punishment, but not cruel or unusual. The Court wrote:

> The only factor that points toward this legislation resembling a civil remedy is its connection to a nonpunitive purpose. In all other respects, the 2021 SORA resembles punishment. It approximates the traditional punishments of shaming and parole, burdens registrants with onerous requirements under the threat of imprisonment for noncompliance, and serves the penological goal of retribution. It is excessive in relation to its stated purpose because it imposes various duties based on unscientific groupings rather than individualized risk profiles, includes a publication requirement that may diminish its overall effectiveness in reducing recidivism, and remains operative beyond any plausible point of utility for thousands of registrants. For all of these reasons, we conclude that the 2021 SORA constitutes punishment. [*Kardasz*, ___ Mich at ___; slip op at 32-33.]

The Court then considered the *Lorentzen* factors to determine whether lifetime registration was cruel or unusual either facially or as applied to the defendant, who was a "Tier III" offender convicted of CSC-I. *Id*. at ___; slip op at 2, 33-34. Regarding the first factor (severity of the punishment relative to the offense), the Court recognized that Tier III offenses include a "wide range of sexual offenses" that are "grave" and "abhorrent." The Court concluded that lifetime registration was not excessive relative to the offense because it presented "particularly grave offenses and a relatively moderate punishment." The Court noted that "the excessiveness of SORA's reporting requirements may increase over time, such as for Tier III offenders who have lived offense-free for decades"; however, because the defendant was recently incarcerated, that concern was not at issue. *Id*. at ___; slip op at 35.

With regard to the second *Lorentzen* factor (punishments for other offenses in Michigan), the Court concluded that lifetime registration for Tier III offenses was not disproportionate when compared with the punishments for Tier II and Tier I offenses or when compared to the lengthy prison sentences imposed for other serious crimes that did not carry a comparable registration

-4-

scheme such as "second-degree murder, MCL 750.317; terrorism, MCL 750.543f; and torture, MCL 750.85." *Id*. at ___; slip op at 37.

Regarding the third *Lorentzen* factor (the punishment imposed for the offense in other jurisdictions), the Court noted that "Michigan is among a substantial minority of states that use a mandatory tier system based on the minimum requirements set out in the federal [Sex Offender Registration and Notification Act, 34 USC 20901 *et seq*.]" and that "Michigan is also among a minority of states that (1) require lifetime registration, (2) do not use a risk assessment, and (3) do not have any mechanism for most lifetime registrants to petition for removal." *Id*. at ___; slip op at 39. Nevertheless, the Court concluded that this factor did not weigh in favor of disproportionality because Michigan was "among a plurality of states with a similar sex-offender-registration regime," given the various registration schemes among the states, and there was no evidence of a national trend away from such registration schemes to render the SORA "uniquely punitive." *Id*. at ___; slip op at 39-40.

As to the fourth and final *Lorentzen* factor (rehabilitation), the Court explained that lifetime registration did not advance the goals of rehabilitation because registration prevented offenders from getting jobs and moving on with their life plans. Registration harms registrants' "financial security, housing stability, and mental health" and carries "severe social consequences that may inhibit rehabilitation and law-abiding behavior." Accordingly, the Court considered that this factor weighed in favor of finding disproportionality. *Id*. at ___; slip op at 40-41.

On balance, the Court concluded that SORA's registration requirements were not cruel or unusual in all instances or as applied to the defendant and accordingly denied the defendant's challenges to SORA under the Michigan and the United States Constitutions. "Tier III offenders have committed serious sex offenses. Their punishment is unique to sex offenses, but it is in alignment with a plurality of states that utilize sex-offender-registration schemes in accordance with the federal SORNA requirements." *Id*. at ___; slip op at 41-42.

Here, defendant is subject to lifetime registration under SORA pursuant to MCL 28.723(1)(a) and MCL 28.725(13), because he is a "Tier III offender." MCL 28.722. Defendant argues that lifetime registration under SORA is so disproportionate to his conviction of CSC-IV against a person under the age of 13 that it constitutes unconstitutionally cruel or unusual punishment both on its face and as applied to defendant. *Kardasz* has already rejected the argument that SORA is facially unconstitutional as cruel or unusual punishment, so defendant's facial challenge must fail. *Kardasz* ___ Mich at ___; slip op at 42.

Defendant also asserts that lifetime registration is a grossly disproportionate punishment as applied to his conviction for a single act of touching the clothed buttocks of a girl who was under the age of 13 as she ascended the stairs in front of him. We conclude otherwise.

Looking to the *Lorentzen* factors, defendant first argues that lifetime registration is too severe relative to the gravity of his offense. See *Parks*, 510 Mich at 242. Defendant's conduct is not as severe as the CSC-I conviction that the Court considered in *Kardasz*, ___ Mich at ___; slip op at 34-35; the Court stated that lifetime registration in that case was a "relatively moderate punishment." However, although defendant pleaded no contest only to charges of CSC-IV, defendant's sexual contact with a person under 13 years old satisfies the elements of CSC-II. See

-5-

MCL 750.520c(1)(a) and MCL 750.520a(q).  In that sense, defendant's argument attempts to portray his *conduct* as less severe than it was simply because he pleaded to a lesser *charge*.  CSC-II committed against a person under the age of 13 is also a Tier III offense.  MCL 28.722.

The Legislature has clearly taken the view that sexual offenses against victims who were under the age of 13 at the time, like defendant's crime, are serious enough to warrant lifetime registration.  Indeed, the *Kardasz* Court, ___Mich at ___; slip op at 37, stated that "Tier III offenses include the gravest sexual crimes, such as . . . fourth-degree criminal sexual conduct, MCL 750.520e, which requires sexual contact when one of several additional circumstances is shown."  The *Kardasz* Court suggested that lifetime registration might be overly severe as applied to "Tier III offenders who have lived offense-free for decades" or a defendant who can provide "evidence of his individual risk of reoffending."  *Id*. at ___; slip op at 35.  Defendant is neither. Defendant has not lived on the registry without reoffending for a significant length of time, nor has he provided evidence that he has a particularly low risk of reoffending.  The presentence investigation report shows that defendant has a high risk of reoffending given that he committed CSC offenses against multiple children in this case and on May 19, 2022, a jury convicted him of committing another act of CSC-IV (victim between 13 and 15 years old) while he was on bond in this case.  Accordingly, the first *Lorentzen* factor does not weigh in favor of disproportionality.

The remaining *Lorentzen* factors were squarely addressed in *Kardasz*.  Lifetime registration for Tier III offenses is not disproportionate as compared to other offenses in Michigan. *Id*. at ___; slip op at 37.  And Michigan is not unique in imposing lifetime registration on sex offenders like defendant because a plurality of states apply a variety of sex offender registration schemes.  *Id*. at ___; slip op at 39-40.  These factors do not weigh in favor of disproportionality. But our Supreme Court did conclude that lifetime registration did not serve the goal of rehabilitation, which weighed in favor of disproportionality.  *Id*. at ___; slip op at 40-41.

Considering the *Lorentzen* factors as a whole, as in *Kardasz*, "the 2021 SORA is not cruel or unusual punishment either in all instances or as applied to defendant."  *Id*. at ___; slip op at 41.

## II.  EX POST FACTO

Defendant next argues that because SORA is a criminal punishment, to the extent that it increased his punishment for offenses he committed before the effective date of the 2021 SORA, applying the 2021 SORA to his conviction constitutes ex post facto punishment in violation of the Michigan and United States Constitutions.

The Michigan and United States Constitutions prohibit ex post facto laws.  US Const, art I, § 10; Const 1963, art 1, § 10.[2]  "A law is considered ex post facto if it: (1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) increases the punishment for a [committed] crime; or (4) allows the prosecution to convict on less evidence."  *Betts*, 507 Mich at 542 (quotation marks and citation omitted; alteration in original).  "The prohibitions on ex post facto laws assure that legislative Acts give fair warning of

---

[2] These constitutional provisions are understood to convey equivalent protections.  See *Betts*, 507 Mich at 542 n 12.

their effect and permit individuals to rely on their meaning as well as prevent the government from imposing arbitrary and vindictive legislation." *Id*. (quotation marks and citation omitted).

At issue is the third type of ex post facto concern, namely, whether the 2021 SORA retroactively increased defendant's punishment for crimes that he committed before the 2021 SORA's effective date of March 24, 2021. This issue requires comparing the 2021 SORA with the SORA as amended by 2011 PA 17 and 18 (the 2011 SORA), which was in effect at the time of defendant's crimes.

> The 2021 SORA implemented various ameliorative provisions, including: removing the student-safety-zone prohibitions; no longer categorizing assignments under the Holmes Youthful Trainee Act, MCL 762.16 *et seq*., as registrable offenses, MCL 28.722(a)(*ii*); no longer categorizing expunged convictions as registrable offenses, MCL 28.722(a)(*i*); removing registrants' tier classification from the public website, MCL 28.728(3)(e); adding a requirement that the failure to register be a "willful[ ]" failure to comply, MCL 28.729(2); and providing that the Michigan State Police may create means other than in-person reporting by which registrants provide immediate information updates to law enforcement, MCL 28.725(1) and (2). The legislation also implemented other and potentially more-onerous changes, including requiring registrants to report to law enforcement all "internet identifiers"—i.e., "all designations used for self-identification or routing in internet communications or posting." MCL 28.725(2)(a); MCL 28.722(g). (Previously, a registrant was required to report "any electronic mail or instant message address, or any other designations used in internet communications or postings." See MCL 28.725(1)(f), as amended by 2011 PA 17.) [*Lymon II*, 515 Mich at 153-154.]

"Generally, a criminal defendant is sentenced according to the statute in force at the time he committed the crime." *People v Sinistaj*, 184 Mich App 191, 202; 457 NW2d 36 (1990). "An amendment to a criminal statute which concerns sentences or punishment is not retroactive." *Id*.

The principle behind the prohibition against ex post facto laws is that the public must have fair notice of the penalties for unlawful conduct. See *Betts*, 507 Mich at 542. "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver v Graham*, 450 US 24, 30; 101 S Ct 960; 67 L Ed 2d 17 (1981), overruled in part on other grounds *California Dep't of Corrections v Morales*, 514 US 499, 506 n 3 (1995).

We reject defendant's argument for three reasons. First, defendant does not identify which of the 2021 SORA amendments he is attempting to avoid because it provides an increased punishment. Without identification of any specific change between the 2011 SORA and the 2021 SORA that actually increased the punishment, there would be no ex post facto problem. And, it is the responsibility of defendant to identify such a condition if he wishes to properly contest it as an ex post facto violation. *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

Second, although defendant's supplemental brief on appeal identifies the expanded disclosure of "internet identifiers," MCL 28.722(g) and MCL 28.725(2)(a), as constituting ex post facto punishment,[3] he has not explained how that disclosure requirement differs—or increasingly differs—from the 2011 disclosure requirements. The portion of the 2021 SORA that contains the "internet identifiers" disclosure requirement is MCL 28.725(2)(a):

> (2) An individual required to be registered under this act who is a resident of this state shall report in the manner prescribed by the department to the registering authority having jurisdiction where his or her residence or domicile is located not more than 3 business days after any of the following occur:

> (a) Except as otherwise provided in this subdivision, any change in vehicle information, electronic mail addresses, internet identifiers, or telephone numbers registered to or used by the individual. The requirement to report any change in electronic mail addresses and internet identifiers applies only to an individual required to be registered under this act after July 1, 2011.

Previously, however, MCL 28.725(1)(d) and (f) required disclosure when "the individual changes his or her name" or "establishes any electronic mail or instant message address, or any other designations used in internet communications or postings." We consider the 2021 addition of "internet identifiers" as merely an upgraded term for "any other designations used in internet communications or postings," not as an increased punishment.

Third, this Court addressed this argument in *People v Henriques (After Remand)*, unpublished per curiam opinion of the Court of Appeals, issued November 9, 2023 (Docket No. 359614), p 8, where the defendant argued "that, because the 2021 SORA added restrictions that were more severe than those in the 2011 SORA, requiring him to register under the 2021 SORA increased his punishment in violation of the constitutional prohibitions against ex post facto laws." The Court rejected the argument, holding:

> The flaw in defendant's argument is his failure to assess the differences between the 2011 SORA and the 2021 SORA as a whole rather than to consider in isolation those provisions in the 2021 SORA that are more restrictive than those in the 2011 SORA. See *Betts*, 507 Mich at 549 (explaining that, to determine whether a statute is punitive in character, a court must consider the statute as a whole). The *Betts* Court indicated that 2020 PA 95 removed several particularly restrictive provisions from the 2011 SORA but also introduced "a bevy of other changes," some ameliorative and some that were more restrictive. *Id*. at 567-568. Neither *Betts* nor

---

[3] Defendant also asserts that he is subject to "ongoing in[-]person reporting," but he again does not cite the specific provision. In any event, the 2021 SORA does not appear to impose more burdensome in-person reporting requirements than the 2011 SORA. MCL 28.725a has required Tier III offenders to report in-person four times a year since at least April 1, 2014. See MCL 28.725a as amended by 2013 PA 149. Indeed, one ameliorative change in the 2021 SORA was to allow registrants to report certain information in-person or "in another manner as prescribed by the department." MCL 28.725(1).

*Lymon*[4] addressed whether the 2021 SORA *as a whole* was more punitive than the 2011 SORA. In fact, this Court indicated in *Lymon*, 342 Mich App at 80, that, although the restraints imposed by the 2021 SORA were excessive, they were fewer than in the 2011 SORA.

> On the basis of the foregoing, we conclude that defendant has not shown that the 2021 SORA was more punitive as a whole than the 2011 SORA such that the retroactive imposition of the 2021 SORA increased his punishment from what he would have experienced had he been able to register under the version of the SORA that was in effect at the time he committed the registerable crimes, i.e., the 2011 SORA. Accordingly, defendant has not established a violation of the constitutional prohibition against ex post facto laws. [*Id*.]

This reasoning is persuasive. Accordingly, even though the 2021 SORA requirements are punishment, *Kardasz*, ___ Mich at ___; slip op at 33, we hold that applying the challenged 2021 SORA reporting requirements to defendant does not violate the ex post facto clause of either constitution.

## III. SIXTH AMENDMENT

Finally, defendant argues that the procedure for determination of his SORA tier violated his Sixth Amendment right to due process. Specifically, he asserts that because SORA registration is a punishment, facts that affect how long he had to register under SORA must be found beyond a reasonable doubt by a jury or admitted by him. But defendant pleaded no contest to three counts of CSC-IV, and none of those charges required that the victim was under the age of 13 as an element of the offense.

To preserve an issue for appellate review a defendant must timely raise the issue in the trial court. See *People v King*, 512 Mich 1, 9-10; 999 NW2d 670 (2023). Defendant failed to do so here. We review unpreserved issues for plain error. *People v Beck*, 510 Mich 1, 27; 987 NW2d 1 (2022). "Plain error exists when 1) [an] error . . . occurred[;] 2) the error was plain, i.e., clear or obvious[;] 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted; ellipsis in original). "[R]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity[,] or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks, citation, and alteration omitted).

---

[4] Although this reference was to the *Lymon I* decision, this part of the *Lymon I* analysis was not affected by *Lymon II*, as the Court only addressed whether the 2021 SORA was cruel or unusual as to offenders convicted of crimes with a nonsexual component.

Defendant waived his right to challenge the factual basis of his classification as a Tier III offender under SORA by pleading no contest because the 2021 SORA was considered a punishment under the operative precedent at the time of defendant's pleas.[5]

A defendant's right to a trial by jury requires that every fact that constitutes an element of a criminal offense must be found beyond a reasonable doubt by a jury, and "facts that increase the prescribed range of penalties to which a criminal defendant is exposed are elements of the crime." *Alleyne v United States*, 570 US 99, 111; 133 S Ct 2151; 186 L Ed 2d 314 (2013) (quotation marks and citation omitted). Facts that merely inform a sentencing court's exercise of discretion within a defined range of sentences need not be found by a jury, but facts that, if found, compel an increase in a defendant's punishment must be found by a jury. See *People v Lockridge*, 498 Mich 358, 375, 383; 870 NW2d 502 (2015).

A defendant who pleads guilty or no contest waives several constitutional rights, including the right to a trial by jury and the right to have the elements of the crime proven beyond a reasonable doubt. See MCR 6.302(B), and *People v Cole*, 491 Mich 325, 332; 817 NW2d 497 (2012). A plea of no contest is "an admission of all the essential elements of the charged offense." *People v New*, 427 Mich 482, 493 n 10; 398 NW2d 358 (1986). No-contest pleas are governed by MCR 6.302, which requires that a plea must be "understanding, voluntary, and accurate" to be valid, *People v Spears*, 346 Mich App 494, 507; 13 NW3d 20 (2023), in keeping with the Due Process Clause of the Fourteenth Amendment, see US Const, Am XIV; *Cole*, 491 Mich at 332-333.

"In the case of a plea of nolo contendere, the standard to be applied by an appellate court in its review of the adequacy of factual bases for a plea is whether the trier of fact could properly convict on the facts elicited from reliable sources." *People v Patmore*, 264 Mich App 139, 151 n 4; 693 NW2d 385 (2004). A defendant who enters a plea of no contest generally waives the right to challenge the factual basis of his or her conviction on appeal unless he or she enters a conditional plea agreement that reserves that right. See *People v Cook*, 323 Mich App 435, 446-447; 918 NW2d 536 (2018). Waiver is "the intentional relinquishment or abandonment of a known right. One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (quotation marks and citations omitted).

Defendant is subject to lifetime registration under SORA pursuant to MCL 28.723(1)(a) and MCL 28.725(13), because he is a Tier III offender on the basis that he committed CSC-IV against a person who was less than 13 years old, MCL 28.722(v)(*vi*). Absent the determination that one of defendant's victims was less than 13 years old, defendant would have been classified as only a "Tier II offender" because of his conviction of CSC-IV (victim between 13 and 15 years old), MCL 750.520e(1)(a). MCL 28.722(s) and (t)(*x*). As a Tier II offender, defendant would have been required to register under SORA for only 25 years. See MCL 28.725(12).

---

[5] Defendant, through counsel, indicated that the court could consider the police reports as a factual basis for his no contest plea, and during the plea process acknowledged that one of the offenses specifically involved a victim under the age of 13.

Defendant's argument that he cannot constitutionally be classified as a Tier III offender under SORA because he did not admit the fact that one of his victims was under 13 years old in the course of his pleas essentially amounts to a challenge that defendant's plea was inaccurate with respect to his commission of a Tier III offense because it lacked a sufficient factual basis. See MCR 6.302(D)(2). Defendant waived this challenge by entering an unconditional plea of no contest, as his no-contest pleas waived his right to challenge the factual basis of whether he committed a Tier III offense. See *Cook*, 323 Mich App at 446-447. In fact, defense counsel specifically waived "any objections to the [trial court's] compliance with MCR 6.302 regarding the taking of pleas."

Affirmed.

/s/ Christopher M. Murray
/s/ James Robert Redford
/s/ Michelle M. Rick